<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURA A. O'REILLY<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No. 14-08099 (SDW)<br><br>**OPINON**<br><br>December 17, 2015 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Laura A. O'Reilly's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Elias Feuer's ("ALJ Feuer") denial of Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Feuer's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision must be **AFFIRMED**.

I.      **PROCEDURAL AND FACTUAL HISTORY**

    A.  **Procedural History**

On August 5, 2011, Plaintiff applied for DIB and SSIB alleging disability as of July 1, 2008 (Tr. 191, 197), due to post-traumatic stress disorder ("PTSD"), anxiety, depression and attention deficit disorder ("ADD"). (Tr. 234.) Plaintiff's claims for DIB and SSIB were considered concurrently. (Tr. 21.) Plaintiff's claims were denied both initially and upon reconsideration. (Tr. 70–71, 88–89.) Plaintiff's subsequent request for a hearing before an administrative law judge was granted (Tr. 157–61), and a hearing was held before ALJ Feuer on February 12, 2013. (Tr. 34–69.) Plaintiff appeared and testified at the hearing. (*See* Tr. 34–69.) On April 15, 2013, ALJ Feuer issued a decision finding Plaintiff was not disabled and denying her claims for disability benefits. (Tr. 21–29.) On October 29, 2014, the Appeals Council denied Plaintiff's request for review of ALJ Feuer's April 15, 2013 decision, making it the Commissioner's final decision. (Tr. 1–5.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand for an award of DIB and SSIB. (Compl. 2.)

    B.  **Factual History**

        *1.   Personal and Employment History*

Plaintiff was 52 years old at the time of ALJ Feuer's decision in 2013. (Tr. 29; Pl.'s Br. 2.) Plaintiff is a college graduate with a master's degree in social work. (Tr. 38.) She was previously employed as a social worker and a waitress. (Tr. 38.) Her last relevant employment period was in 2008 as a social worker performing discharge planning and documenting. (Tr. 34, 208-09.)

### 2. *Medical History*

The record reflects that Laura Brenner, M.D.'s ("Dr. Brenner") examination and treatment notes comprise Plaintiff's entire medical history with regard to Plaintiff's claims. (*See* Tr. 274–344.) Dr. Brenner examined Plaintiff approximately every two to three months from February 21, 2008, through December 13, 2012. (*See* Tr. 307–41.) In addition, Plaintiff testified about her health during the hearing before ALJ Feuer. (*See* Tr. 27–69.) The following is a summary of the medical evidence:

During the course of Plaintiff's treatment, Dr. Brenner primarily prescribed Geodon and Ritalin to treat Plaintiff's symptoms. (*See* Tr. 307–344.) On April 30, 2009, Plaintiff reported that the medications were working well, but that she was also stressed due to financial concerns. (Tr. 308.) Plaintiff continued her medication and tried to stay positive. (Tr. 308.)

On January 19, 2010, Dr. Brenner reported that Plaintiff had lost a total of forty-nine pounds, and that Plaintiff "looked good." (Tr. 309.) Plaintiff continued her medication, and on September 13, 2010, reported feeling "down" due to money issues, and stressed because she was forced to rely on her friend, Sam Banke ("Mr. Banke") for financial stability. (Tr. 315.) However, Plaintiff also stated that she was working three days per week as a waitress at a diner. (Tr. 315.)

On January 29, 2011, Dr. Brenner noted that Plaintiff still worked at the diner but continued experiencing financial issues. (Tr. 315.) Plaintiff also stated, on that date, that her continued use of Geodon and Ritalin helped manage her symptoms. (Tr. 315.) Thereafter, on June 22, 2011, Plaintiff told Dr. Brenner that she was only able to work one, four-hour waitress shift per week, and she was trying to apply for assistance to be less dependent on Mr. Banke. (Tr. 323.) During the June 22, 2011 visit, Plaintiff requested that Dr. Brenner aid Plaintiff in

3

completing an assistance request form. (Tr. 323.) Plaintiff also stated that she was "getting by" on the prescribed medications. (Tr. 323.)

Dr. Brenner's July 17, 2011 notes indicate that Plaintiff intended, on that date, to apply for DIB based on depression and PTSD, and that Plaintiff scheduled an interview with the Social Security Administration (the "Administration") for August 5. (Tr. 323.) On August 2, 2011, Dr. Brenner reviewed Plaintiff's disability questionnaire and noted that Plaintiff did not work, struggled handling crowds, and experienced money issues. (Tr. 323.)

Plaintiff visited Dr. Brenner again on October 26, 2011. (Tr. 334.) Dr. Brenner noted that Plaintiff was not well groomed, and felt discouraged, down, and fearful. (Tr. 334.) Plaintiff further indicated that the medications were the only thing keeping her from "dropping out." (Tr. 334.)

Dr. Brenner noted during Plaintiff's November 16, 2011 visit that Plaintiff again looked down and was not "well groomed." (Tr. 334.) Plaintiff additionally expressed concerns about her son's alcohol abuse and sought a way to help him. (Tr. 334.) During a December 7, 2011 visit, Plaintiff reported still feeling very down, and had been unable to complete the disability report for her attorney. (Tr. 334.) Dr. Brenner urged Plaintiff to complete the report so Plaintiff could focus on her "ability" and not her "disability." (Tr. 334.)

On January 18, 2012, Dr. Brenner again noted that Plaintiff was poorly groomed and that Plaintiff continued her relationship with Mr. Banke. (Tr. 334.) On April 4, 2012, Dr. Brenner noted that Plaintiff appeared disheveled and panicked. (Tr. 329.) In addition, Plaintiff claimed she was now "totally dependent" on Mr. Banke after receiving her second Social Security benefit denial letter. (Tr. 329.) On June 13, 2012, Plaintiff again presented to Dr. Brenner as poorly groomed and depressed. (Tr. 335.) Plaintiff noted that the medications helped her keep her

4

"head above water." (Tr. 335.) Moreover, the June 29, 2012 notes show that Dr. Brenner believed Plaintiff suffered "major depression." (Tr. 335.)

Dr. Brenner's notes also show that Plaintiff met with Dr. Brenner on July 11, 2012, to discuss Plaintiff's disability claim paperwork. (Tr. 342.) Dr. Brenner noted at this time that Plaintiff had not showered since February and showed no response to the newly prescribed medication, Celexa. (Tr. 342.) Thereafter, on August 10, 2012, Plaintiff again stated that financial issues caused her much stress and that she did not feel disability payments could support her. (Tr. 343.) During the final visit on January 14, 2013, Dr. Brenner indicated that Plaintiff was "down" for several days, and was "much worse over the weekend." (Tr. 334.)

### 3. *Form Reports*

In addition to detailed medical history notes, Dr. Brenner completed a series of form reports regarding Plaintiff's medical conditions throughout Plaintiff's treatment. (*See* Tr. 274–341.)

On June 22, 2011, Dr. Brenner completed an examination report diagnosing Plaintiff with PTSD and depression with an onset date of October, 2000. (Tr. 274.) Dr. Brenner found that Plaintiff's psychiatric/psychological disability stemmed from an anxiety disorder and depression, and that Plaintiff had no history of alcohol or substance abuse. (Tr. 274.) Dr. Brenner opined that Plaintiff could not work a full eight-hour workday and that Plaintiff's disability would persist for twelve months or more. (Tr. 275)

On August 17, 2011, Dr. Brenner completed a Social Security Disability Psychiatric Report ("Psychiatric Report"). (*See* Tr. 277–81.) In the Psychiatric Report, Dr. Brenner stated that Plaintiff suffered from PTSD and depression exhibited by "anxiety, poor focus, poor concentration, depressed mood, nightmares, [and] fear." (Tr. 277.) Dr. Brenner also noted that

Plaintiff had five psychiatric hospitalizations prior to Dr. Brenner's treatment, but Plaintiff had no hospitalizations since treatment commenced. (Tr. 277.) Furthermore, the Psychiatric Report states that Plaintiff had no limitations regarding understanding, memory, or adaptation, but that Plaintiff did have limitations regarding concentration, persistence, and social interactions. (Tr. 280.)

Dr. Brenner filled out additional examination reports on April 11, 2012, and December 13, 2012. (Tr. 338, 340.) In both reports Dr. Brenner listed her diagnosis as PTSD and major depression, presenting with symptoms of anxiety disorder and depression. (Tr. 338.) Dr. Brenner also repeatedly noted that Plaintiff was ambulatory, Plaintiff was unable to work an eight-hour workday, and Plaintiff's disability would last for a period of more than twelve months. (Tr. 338–341.)

On July 12, 2012, Dr. Brenner completed a Medical Source Statement (the "Statement") regarding Plaintiff's disability claim. (*See* Tr. 296–301.) Dr. Brenner noted that she treated Plaintiff as needed since October 2, 2000. (Tr. 296.) In the Statement, Dr. Brenner diagnosed Plaintiff with PTSD, major depression, bipolar disorder, and obesity. (Tr. 296.) Dr. Brenner also stated that Plaintiff suffered very high stress and had no social or family connection. (Tr. 296.) In addition, Dr. Brenner indicated that Plaintiff's medications are expected to have some side effects, but will "only be mildly troublesome," resulting in difficulty concentrating and focusing for 6% to 33% of an eight-hour workday. (Tr. 296.) The Statement shows Plaintiff's impairments could be expected to last at least twelve months and Plaintiff was "very guarded." (Tr. 297.) Dr. Brenner further reported that Plaintiff suffered extreme restrictions of activities of daily living, extreme difficulties maintaining social functioning, extreme deficiencies of concentration, persistence or pace, and four or more "[r]epeated episodes of decompensation

within [a twelve] month period, each of at least two weeks duration." (Tr. 300.) In addition to a medically documented history of a chronic mental disorder of at least two years' duration, Dr. Brenner stated Plaintiff had a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," and "[a]n anxiety-related disorder and complete inability to function independently outside the area of [Plaintiff's] home." (Tr. 300.)

Dr. Brenner additionally submitted Supplemental Questionnaires along with the Statement. (*See* Tr. 302–03.) In the Questionnaires Dr. Brenner reported that Plaintiff suffers profound and intractable fatigue that "virtually incapacitates [Plaintiff]." (Tr. 302.) In addition, Dr. Brenner stated that, if employed, Plaintiff would likely require more than four absent days per month from work as a result of Plaintiff's impairments. (Tr. 303.)

### 4. *Third-Party Letter*

Plaintiff's friend, Sam Banke, wrote and submitted an undated letter to Plaintiff's attorney describing Plaintiff's issues/impairments. (*See* Tr. 266–68.) Mr. Banke stated that Plaintiff experienced ongoing "difficulty with the stress of everyday life," and that Plaintiff self-harmed and attempted suicide multiple times in the past. (Tr. 266.) Mr. Banke further wrote that Plaintiff was unable to deal with any amount of stress. (Tr. 266.) According to Mr. Banke, Plaintiff began avoiding people and public places after she suffered an assault and attempted rape. (Tr. 267.) Plaintiff then began working, and was fired from every job due to difficulty with authority stemming from an inability to follow instructions. (Tr. 267.) Lastly, Mr. Banke stated that he takes care of Plaintiff and assists in Plaintiff's daily living, including making sure Plaintiff changes clothes and eats. (Tr. 267–68.)

### 5. *Hearing Testimony*

At the hearing before ALJ Feuer on February 12, 2013, Plaintiff testified about her previous employment, daily activities, debilitating conditions, and medication/treatment. (*See* Tr. 36–69.) Plaintiff testified that she received a graduate degree in social work and was previously employed as a social worker primarily conducting discharge planning. (Tr. 39.) However, Plaintiff also testified that she was fired due to excessive absenteeism resulting from her depression as well as failing to "get along with" her supervisors. (Tr. 40–48.) Plaintiff also testified about her history of suicide attempts and consequent hospitalizations. (Tr. 51–52.) Lastly, Plaintiff testified about her inability to conduct daily activities due to immense stress, her reliance on Mr. Banke, and her difficulty lifting more than approximately ten pounds. (Tr. 58–67.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not

met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

9

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual

is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a),

416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.    DISCUSSION**

ALJ Feuer applied the Five-Step Disability Test to the facts comprising Plaintiff's application for benefits and determined that Plaintiff was not disabled under the relevant portions of the Act. (*See* Tr. 21–29.) Specifically, ALJ Feuer determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 24, 27 (citations omitted).) These findings are supported by substantial credible evidence in the record and are based on proper legal analysis. Therefore, this Court affirms ALJ Feuer's denial of DIB and SSIB. The following is an outline of ALJ Feuer's five-step analysis:

At step one of the disability analysis, ALJ Feuer properly found that Plaintiff had not engaged in SGA since July 1, 2008, the alleged onset date of Plaintiff's disability. (Tr. 23); *see* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571 *et seq*. ALJ Feuer accordingly proceeded to step two to determine what, if any, severe impairments Plaintiff suffered. *See* C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).

At step two, ALJ Feuer properly considered the entire medical record in finding Plaintiff suffered from the following severe impairments: "depression and anxiety." (Tr. 23); *see* 20 C.F.R. § 404.1520(c). ALJ Feuer found that these severe impairments "significantly limit [Plaintiff's] mental and physical abilities to do one or more basic work activities. In addition, [Plaintiff's] impairments have lasted at a 'severe' level for a continuous period of more than 12 months." (Tr. 23–24.) ALJ Feuer's findings of severe impairments are supported by substantial credible evidence in the record. Once ALJ Feuer determined which of Plaintiff's impairments qualified as "severe," ALJ Feuer considered, under step three, whether Plaintiff's severe

impairments equal or exceed those in the Listing of Impairments in the Act. *See* C.F.R. § 404.1520(a)(4)(iii).

At step three, ALJ Feuer properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 24.) Specifically, ALJ Feuer found that Plaintiff's mental impairments did not meet or medically equal the severity requirements set forth in listings 12.04 and 12.06. (Tr. 24.) ALJ Feuer was correct that the Paragraph B requirements were not satisfied because Plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. (Tr. 24); *see* 20 C.F.R. § 404.1520(d). In reaching this conclusion, ALJ Feuer properly found that Plaintiff only had moderate restriction in activities of daily living. (Tr. 24.) In support of this finding, ALJ Feuer cited to evidence and stated that Plaintiff "has some difficulties engaging in activities of daily living in an appropriate and effective manner, on an independent and sustained basis." (Tr. 24.) Although Plaintiff received some help with chores, she is able to independently care for herself and perform simple tasks. (Tr. 24.) ALJ Feuer also found that Plaintiff only has mild difficulties in social functioning, and cited Plaintiff's testimony and the record that Plaintiff "is, for the most part, capable of interacting independently, appropriately, effectively, and on a sustained basis with other individuals," and that Plaintiff socializes with her son and Mr. Banke. (Tr. 24.) Next, ALJ Feuer found that Plaintiff only has moderate difficulties with regard to concentration, persistence or pace. (Tr. 24.) Lastly, ALJ Feuer properly found that the record evidence reflects that Plaintiff has not experienced any episodes of decompensation lasting for an extended duration. (Tr. 24.) ALJ Feuer also found that the evidence failed to establish the presence of the

Paragraph C criteria. (Tr. 24.) Therefore, ALJ Feuer properly found that Plaintiff's impairments did not equal or exceed the impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Accordingly, Plaintiff was not disabled under step three analysis, leading ALJ Feuer to step four to determine whether Plaintiff can perform any of her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e).

Before undergoing the analysis in step four, ALJ Feuer determined Plaintiff's RFC. (Tr. 25–27); *see* 20 C.F.R. §§ 404.1520(e), 404.1545. ALJ Feuer properly concluded that Plaintiff has the RFC to perform a full range of work. (Tr. 25.) After extensive review of the record, ALJ Feuer found that, "[Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to performing routine tasks." (Tr. 25.) In making this determination, ALJ Feuer considered both objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929 and SSRs 96-4p and 96-7p. (Tr. 25.) He also considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Tr. 25.) In support of his finding, ALJ Feuer cited extensively to Plaintiff's testimony and Dr. Brenner's treatment and evaluative records. (*See* Tr. 25–27.) In light of the substantial evidence reviewed by ALJ Feuer, this Court finds that ALJ Feuer properly determined Plaintiff's RFC.

After determining Plaintiff's RFC, at step four ALJ Feuer properly found that Plaintiff cannot perform her past relevant work under 20 C.F.R. § 404.1565 and § 416.965. (Tr. 27); s*ee* 20 C.F.R. § 404.1520(a)(4)(iv). ALJ Feuer noted that Plaintiff's past relevant work was performed at the semi-skilled level, and based on Plaintiff's RFC limitation to performing routine tasks, Plaintiff is unable to work as a social worker or as a waitress. (Tr. 27.) Because

ALJ Feuer determined that Plaintiff cannot perform any of her past relevant work, ALJ Feuer continued to step five to determine whether there exists work in the national economy Plaintiff could perform. (*See* Tr. 27–28); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 404.1520(g)(1).

At step five, ALJ Feuer properly found that Plaintiff can perform work that exists in significant numbers in the national economy. (Tr. 27–28); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1569, 404.1569a. ALJ Feuer considered Plaintiff's age, education, work experience and RFC in connection with 20 C.F.R. Part 404 Subpart P, Appendix 2. (Tr. 27.) ALJ Feuer did not require the testimony of a vocational expert, and properly used section 204.00 in the Medical-Vocational Guidelines ("Section 204.00") as a framework for decision-making because Plaintiff's ability to perform work at all exertional levels is compromised solely by non-exertional limitations. (Tr. 27–28); *see* SSR 85-15. Furthermore, ALJ Feuer noted that Plaintiff's limitations "have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. 28.) Therefore, ALJ Feuer correctly determined that Plaintiff is "not disabled" under the framework of Section 204.00 in accordance with SSR 85-15. (Tr. 28.) In ALJ Feuer's decision, he concluded that although Plaintiff is limited to performing routine tasks, Plaintiff retains the ability to perform unskilled work outlined in SSR 85-15. (Tr. 28.) Thus, ALJ Feuer's factual finding that Plaintiff is capable of performing work that exists in significant numbers in the national economy is supported by substantial credible evidence. Accordingly, ALJ Feuer was correct in determining that Plaintiff is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (Tr. 28–29); *see* 20 C.F.R. § 404.1520(a)(4)(v).

**CONCLUSION**

Because this Court finds that ALJ Feuer's factual findings were supported by substantial credible evidence in the record and that ALJ Feuer's legal conclusions were correct, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties